IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 0 6 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ALFONSO DELGADO )<br>  Plaintiff, )<br> )<br> )<br>v.    )<br> )<br>JO ANNE B. BARNHART, )<br>Commissioner of the )<br>Social Security Administration, )<br>  Defendant. ) | CIVIL ACTION NO: B-02-179 |

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGEMENT
AND IN RESPONSE TO PLAINTIFF'S BRIEF**

### I. STATEMENT OF THE ISSUE

Whether the Commissioner's finding that Plaintiff has a "limited education" is supported by substantial evidence.

### II. STATEMENT OF THE CASE

Plaintiff filed an application for Social Security disability benefits on June 8, 1997, alleging that he became disabled on April 16, 1997 due to a back injury and leg pain (Tr. 82, 101). After his claim was denied at the first two levels of review, he requested an administrative hearing, which was held on July 22, 2000 (Tr. 23). Plaintiff testified at the hearing, as did a medical expert (ME) and a vocational expert (VE) (Tr. 23).

Plaintiff was born in December 1948 (Tr. 82). Therefore, he was fifty-one years old at the time of the ALJ's decision. He graduated from high school in Mexico and has worked as a painter, having last worked in 1997 (Tr. 27, 29). At the hearing, Plaintiff testified that he continued to have back pain and pain into his legs (Tr. 34).

Plaintiff was injured at work in 1997 (Tr. 126). He saw Dr. B. N. Lakshmikanth at that time. After examining Plaintiff, Dr. Lakshimikanth recommended that he use a lumbosacral support and return to light work (Tr. 146).

Plaintiff continued to undergo conservative treatment for several months until October 1998, when he underwent a lumbar laminectiomy. His surgeon, Dr. Madhavan Pisharodi reported in February 1999 that Plaintiff's pain had improved significantly after surgery and that he had reached maximum medical improvement with only a 12 percent impairment of his whole body (Tr. 126). In September 1999, Dr. Pisharodi noted that Plaintiff had not returned to work, even though the doctor had recommended that Plaintiff return to his old job. Neurologic exam at that time showed no obvious deficits and Dr. Pisharodi stated that Plaintiff was to return to light duty work and then progress to regular duty (Tr. 121).

Plaintiff was seen by Dr. Oliver Acheitner, a consulting physician, in April 2000 (Tr. 143). Plaintiff reported that he had tried to return to work but was laid off. Plaintiff said that he was unable to obtain other work after employers learned of his prior back injury (Tr. 143). After examining Plaintiff and his x-rays, Dr. Acleitner reported that he did not see any indication for further back surgery. Plaintiff had no signs of instability and only minimal degenerative change, which was consistent with his age. The doctor also believed that Plaintiff was capable of some sort of light work, but with limited standing and no heavy lifting (Tr. 143).

At the hearing Dr. Arthur Briggs, the medical expert testified that a CAT scan showed only mildly bulging discs, without cord compression or evidence of nerve abnormalities. Therefore, in his opinion Plaintiff's subjective complaints were out of proportion with what the objective evidence indicated (Tr. 45). From the objective evidence, the medical advisor

2

concluded, that Plaintiff "certainly" could do light work (Tr. 45). He testified that Plaintiff could perform work of light exertion that did not require repetitive bending, stooping, crawling or climbing (Tr. 46).

On July 27, 2000, the ALJ issued a decision in which he found that Plaintiff was not disabled (Tr. 21). The ALJ found that Plaintiff had degenerative disc disease of the lumbar spine and was status-post back surgery (Tr. 20). However, he found that Plaintiff could perform work of light exertion which did not require repetitive bending, stooping, crawling or climbing (Tr. 17). The VE testified that there were significant numbers of jobs in the economy that an individual with Plaintiff's vocational profile and these restrictions could perform, including work as a sales attendant, laundry worker or fast food worker (Tr. 49-50). Thus, the ALJ found that Plaintiff was not disabled within the framework of the medical-vocational guidelines (Tr. 21). After the Appeals Council denied Plaintiff's request for review, he filed this complaint pursuant to 42 U.S.C. § 405(g).

## II. ARGUMENT

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence exists if a reasonable mind might accept it as adequate to support a conclusion. *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or

medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In determining whether an individual applicant is capable of performing any "substantial gainful activity," a five-step "sequential evaluation" is used. 20 C.F.R. § 416.920. Here, the ALJ went to the fifth step in the process, finding that Plaintiff was able to perform a significant number of jobs, as identified by the VE (Tr. 21).

Plaintiff apparently does not question the ALJ's finding that he is able to perform light work without repetitive bending, stooping, crawling or climbing. Instead, he raises only one issue. Plaintiff frames the issue as whether the ALJ's decision is proper "when the administrative law judge failed to make a finding on [Plaintiff's] ability to communicate in English." Pl's Br. at 1. The Commissioner takes issue with the assumption, which is implicit in Plaintiff's statement of the issue that, the ALJ did not make a finding about his ability to communicate in English. In fact, the ALJ specifically found that Plaintiff had a "limited education" (Tr. 21). This is a distinctive educational category and includes the ability to communicate in English to a level that would allow him to perform most unskilled jobs. Thus, the question should not be framed as to whether the ALJ erred in not making a finding about Plaintiff's ability to communicate in English, but whether there is substantial evidence to support the ALJ's finding that he has a limited education.

The Commissioner's regulations provide the term "education" also includes how well the individual is able to communicate in English. 20 C.F.R.§ 404.1564(b). A "limited education" is defined as "ability in reasoning, arithmetic and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled jobs." "We generally consider that the 7th grade through the 11th grade level of formal

4

education is a limited education." 20 C.F.R.§ 404.1564(b)(3). Thus, by finding that Plaintiff had a limited education, the ALJ found that Plaintiff had language skills in English that were good enough to allow him to perform most unskilled jobs.

There is substantial evidence in the administrative record to support the ALJ's decision that Plaintiff communicates in English well enough to be classified as having a "limited education." As Plaintiff acknowledged, at the administrative hearing, the ALJ asked Plaintiff if he could read and write in English (Tr. 27). When Plaintiff testified that he could only read a little English, the ALJ asked him to read a newspaper article. Plaintiff read out loud in English an article concerning President Clinton and Israeli and Palestine leaders reaching a "reasonable compromise" at Camp David (Tr. 28). After this demonstration, the vocational expert agreed with the ALJ that Plaintiff had demonstrated the ability to read simple instructions on a job (Tr. 29). The V.E. later testified that Plaintiff's demonstrated educational level was at the "low end of limited" (Tr. 48).

Although an interpreter was present at the hearing, it appears from the written transcript of the hearing that at least parts of the hearing were conducted without the aid of the interpreter. In fact, after Plaintiff had been asked and had answered several questions, the ALJ told the interpreter that he could "pitch in as necessary" (Tr. 27). Moreover, Plaintiff's non-attorney representative argued to the judge that Plaintiff was "highly motivated" because, "he is certainly attempting to do well with his English" (Tr. 43). Additionally, the VE, who had observed Plaintiff throughout the hearing, indicated that he had communication skills at the "low end of limited" (Tr. 48).

Nonetheless, even if Plaintiff had spoken entirely in Spanish during the hearing, the

5

Commissioner submits that Plaintiff's reading demonstration provides substantial evidence that the ALJ could rely on in determining that Plaintiff is not "unable to communicate in English" within the meaning of the regulations and that his English communication skills are at the limited educational level. Plaintiff states in his brief that he had only alleged that he was unable to speak English not that he was illiterate in English. In fact, however, when he applied for benefits, Plaintiff reported that he was unable to read in English, as well as that he was unable to speak in English (Tr. 100). Therefore, Plaintiff's reading demonstration provided good cause for the ALJ not to take at face value Plaintiff's claims about his ability to communicate in English through the spoken word, as well as the written word.

Plaintiff argues that his ability to read English does not demonstrate that he is able to communicate orally in English. He points to the fact that some individuals may have learned to read simple signs in a language that they do not speak. Pl's Br. at 6. However, in this case Plaintiff demonstrated his ability to read a rather complex newspaper article rather than merely the ability to read signs that he has been exposed to. Plaintiff further argues that some individuals may have a reading knowledge of a language without the ability to carry on a conversation in that language. While this may be true of an individual who studies a language without the opportunity to practice the language orally, the Commissioner submits that the ALJ could make the reasonable assumption that an individual who has lived in the United States for many years and has learned to read English, also has learned to communicate orally in English. Thus, the Commissioner submits that Plaintiff's demonstrated ability to read English, by itself, would provide a reasonable basis for the ALJ's conclusion that his communication skills were within the category of a "limited education" pursuant to the Commissioner's regulations.

6

Plaintiff cites the Fifth Circuit case of *Martinez v. Heckler*, 735 F.2d 795 (5th Cir. 1984) in support of his case. Pl's Br. at 4-5, 8. However, *Martinez* is distinguishable from the case at bar and, in fact, has no application to the issue of the instant case. In the *Martinez* case, there was apparently no question that Plaintiff was illiterate and it was uncertain whether he was unable to communication in English. *Id.* at 796. Therefore, the ALJ found that Martinez was not disabled using only the medical-vocational guidelines, in particular, Rule 201.23 , a rule for individuals age 18-44, who are limited to sedentary work, have only performed unskilled work, and are "illiterate or unable to communicate in English." 20 C.F.R, Pt. 404, Subpt. P, App. 2, Tbl. 1. The Court held that, because the rule used the word "or," the Commissioner's interpretation of this rule to include individuals who were <u>both</u> illiterate and unable to communicate in English was unreasonable. Therefore, the Court found that whether Plaintiff was able to communicate in English was significant to this particular case, and remanded the case for such a determination. The Court held that because there was no medical-vocational rule that fit a claimant of Martinez's age and exertional limitations if he were both illiterate and unable to communicate in English the ALJ could not rely on the grid rules and must obtain VE testimony if he were both illiterate and unable to communicate in English *Id.*

The instant case differs from *Martinez* because the ALJ's finding that Plaintiff had a "limited education" indicated that he had language skills in English at a level that would allow him to perform unskilled jobs. 20 C.F.R. 404.1564(b). Thus, the VE's testimony that an individual with a limited education could perform jobs that were identified, would include Plaintiff. The primary holding of *Martinez* is that the ALJ could not rely on the medical-vocational guidelines under the circumstances of the case. Here, the ALJ did not rely on the

7

medical-vocational guidelines, but instead relied on the testimony of a VE who observed Plaintiff at the hearing and determined that he had a limited education within the meaning of the Commissioner's regulations and that he was able to perform certain identifiable jobs.

Plaintiff also incorrectly argues that the ALJ was required to make a finding of the transferability to Plaintiff's skills. Pl's Br. at 8-9. However, the VE identified unskilled jobs that he could perform (Tr. 49). Therefore, there was no need for the ALJ to determine whether Plaintiff had transferable skills.

Finally, the Commissioner would note that Plaintiff has misstated the burden of proof regarding Plaintiff's educational level, stating that the burden of proof lies with the Commissioner. In fact, the Fifth Circuit has long held that the ultimate burden of proof as to whether a claimant is disabled rests with the claimant. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). The Fifth Circuit holds that once the Commissioner has pointed to alternate work that Plaintiff can perform, as she did here through VE testimony, the ultimate burden of proof returns to Plaintiff to demonstrate that he cannot perform that work. *Id.* at 272. Thus, after the VE named jobs that Plaintiff could perform, it was his burden to prove that he did not have the educational skills to perform this work, if that is his contention.

From the discussion above, it is clear that in making a finding that Plaintiff had a limited education, the ALJ found that he had English language skills at that level and that there is substantial evidence to support this finding, including Plaintiff's performance during his reading demonstration and the testimony of the VE, who testified that Plaintiff appeared to have language skills at the lower end of a limited educational level.

III. <u>CONCLUSION</u>.

Because there is substantial evidence supporting the Commissioner's decision that Plaintiff was not disabled, the Commissioner prays that this Court will Affirm the ALJ's decision.

>Respectfully Submitted
>
>MICHAEL T. SHELBY
>United States Attorney
>
>TINA M. WADDELL
>Regional Chief Counsel, SSA
>Special Assistant United States Attorney
>
>By: _____
>MARGUERITE ESPOSITO LOKEY
>Attorney-in-Charge
>Special Assistant United States Attorney
>Federal Bar No. 30213
>Texas State Bar No. 12507500
>Office of the General Counsel, SSA
>1301 Young Street, Suite 430
>Dallas, Texas 75202
>Ph: (214) 767-3297
>Fax: (214) 767-9189

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served by certified United States mail, postage prepaid, to John J. Ingram, II, Hardy-Ingram Law Firm, LTD, 3016-A N. McColl, McAllen, TX 78501, on the 5th day of March 2003.

By: _____
MARGUERITE LOKEY,
Attorney-in-Charge
Special Assistant United States Attorney