IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED
APR 1 6 2003
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| ALFONSO DELGADO,<br>Plaintiff,<br><br>VS.<br><br>JO ANNE B. BARNHARDT,<br>Commissioner of the<br>Social Security Administration,<br>Defendant. | §<br>§<br>§<br>§<br>§ CIVIL ACTION NO. B-02-179<br>§<br>§<br>§<br>§<br>§ |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's, Alfonso Delgado ("Delgado") Motion for Summary Judgment (Docket No. 11) on his claim for judicial review of denial of social security benefits under 42 U.S.C. §405(g). Also pending before the Court, is Defendant's, Commissioner of Social Security Administration ("Commissioner") Motion for Summary Judgment (Docket No. 13). For the reasons set forth below, it is recommended that Delgado's Motion be denied, and the Commissioner's Motion be granted. The facts as set forth herein are uncontested by the parties and based upon a review of the attached motions and exhibits.

I. **Delgado's Medical History**

Delgado was injured at work in 1997 and subsequently consulted with an orthopedic surgeon, Dr. Lakshimikanth, who advised him to use a lumbosacral support and return to light work. Delgado underwent conservative treatment for the next several months. He had a lumbar laminectomy in October 1998, performed by Dr. Pisharodi, a neurosurgeon. By February 1999, Dr. Pisharodi had reported that Delgado's pain had improved and that he reached maximum medical improvement with only a 12% impairment in his whole body. In September 1999, Dr.

Pisharodi reported that Delgado had not yet returned to work despite his recommendation that Delgado was able to return to his previous job. The results of a neurological exam revealed that Delgado had no obvious deficits and that he should return to light work, and later progress to his regular work.

In April 2000, Delgado was examined by Dr. Acheitner. Delgado reported at that time, that he had attempted to regain employment, but was laid off. Delgado stated that his job search was unsuccessful because potential employers had learned of his back injury. Dr. Achleitner concluded: 1) there was no need for further back surgery, 2) there were no signs of instability, 3) there were indications of minimal degenerative change consistent with aging, and 4) Delgado could perform light work with limited standing and no heavy lifting.

**II. Procedural Background**

Delagado's past relevant work was that of an automobile painter. He filed an application for Social Security disability benefits on June 8, 1997, claiming that he had become disabled following his back injury. Delgado's claim was denied and he subsequently requested an administrative hearing which was held on July 22, 2000, before an Administrative Law Judge ("ALJ"). This hearing was conducted in English and Delgado was assisted by a Spanish interpreter. On July, 27, 2000, the ALJ found that Delgado had a Residual Functional Capacity ("RFC") for light work which does not require repetitive bending, stooping, crawling, or climbing and was not disabled. On September 5, 2000, Delgado filed a Request for Review with the Appeals Council, which was denied August 9, 2002. Delgado filed the instant claim for judicial review on September 19, 2002.

2

## III. Administrative Hearing

### A. Medical Expert

During the hearing conducted by the ALJ on July 22, 2000, Dr. Briggs, a medical expert, testified that a CAT scan revealed only mildly bulging discs, without cord compression or evidence of nerve abnormalities. In his medical opinion, Delgado's complaints were out of proportion with the objective evidence. Dr. Briggs concluded that Delgado could perform light work without repetitive bending, stooping, crawling, or climbing.

### B. Vocational Expert

A Vocational Expert ("VE") also testified at the hearing and concluded: 1) Delgado's past relevant work experience as an automobile painter was skilled medium work; and 2) there were a significant number of jobs in the economy that an individual with Delgado's vocational profile and physical limitations could perform. These jobs included work as a sales attendant, laundry attendant or fast food worker.

Delgado was asked to read a portion of a newspaper article in English. Delgado was able to read the complete article for the ALJ. As a result of this demonstration, the VE concluded that Delgado would be able to read simple instructions on a job and that he had an education level at the low end of limited.

### C. Medical-Vocational Profile

Rule 202.09 of the Medical-Vocational Guidelines[1] (also referred to as the "Grid Rules") directs a conclusion of "Disabled" for an individual that is: 1) limited to light work; 2) closely approaching advanced age (50-54); 3) either illiterate or unable to communicate in English or

---

[1] 20 C.F.R., Part 404, Subpart P, Appendix 2.

3

both; and 4) has a history of unskilled work. These Grid Rules permit the ALJ to take administrative notice of jobs in the national economy which a plaintiff may be able to perform despite his/her limitations. The Grid Rules can only be used if they coincide exactly with plaintiff's actual profile as determined by the ALJ. The grid rules are considered to be conclusiv, rather than presumptive[2] if they are applicable.

## IV. Analysis

### A. Claims of the Parties

#### 1. Ability to Communicate in English

Delgado claims the ALJ failed to make a finding on his ability to communicate in English and the transferability of his skills. Delgado argues that the demonstration he gave for the ALJ, in which he read a newspaper article in English, was not demonstrative of his ability to communicate in English. Delgado claims that a person may have a reading knowledge of a language, but at the same time not have the ability to maintain a conversation or communicate in that language. This anomaly, Delgado states, is created from the Spanish speaker's presence in the U.S. and exposure to printed words in signs and publications. Delgado insists that the ALJ should have made a finding specifically as to his ability to communicate English. Delgado then concludes that if the ALJ determines that he does not have the ability to communicate in English, then he would fall under Grid Rule 202.09 which would warrant a deemed finding of disabled. Delgado asserts that this is not a case where the facts determined by the ALJ do not fit the Grid Rules, but rather, the facts were not sufficiently developed in order to apply them to the Grid Rules in the first place. Delgado believes that the case should be remanded for further fact

---

[2] Social Security Ruling 83-5a.

4

finding on the above issue.

The Commission argues that the ALJ did make a finding as to Delgado's ability to communicate in English, because a finding of "Limited Education" encompasses language skills. The definition of "Limited Education" is as follows:

> "Ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these education qualification to do most of the more complex jobs needed in semi-skilled or skilled jobs."

The determination of limited education was supported by the evidence. The Commission points out that the article was quite complex as it concerned President Clinton and Israeli and Palestinian leaders reaching a reasonable compromise at Camp David. The VE concluded from this evidence that Delgado had a "limited education" and would be able to read simple instructions in an unskilled job. Additionally, Delgado's ability to answer various questions in English throughout the hearing, was a basis of the ALJ's decision.

### 2. Transferability of Skills

Delgado argues that the court should have made a finding as to transferability of skills, because if Delgado's automotive painting skills were not transferable, he would be considered unskilled and therefore fit into Grid Rule 202.09, with a deemed finding of disabled. Delgado points to 20 C.F.R. §404.1565(a) which states that the inability to transfer skills acquired in past employment to other jobs is equivalent to an unskilled work history.

The Commission argues that the ALJ did not need to make a finding because the Delgado's RFC was for unskilled labor. As such, the VE independently identified unskilled jobs that Delgado could perform in the national economy.

## B. Jurisdiction

### 1. Timeliness

42 U.S.C. §405(g) provides that, "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of such notice of such decision...".

In this case, the ALJ found Delgado not disabled on July 27, 2000. On September 5, 2000, Delgado filed a Request for Review with the Appeals Council, which was denied August 9, 2002. Delgado then filed the instant claim for judicial review on September 19, 2002. Therefore, Delgado's civil action under §405(g) is timely.

### 2. Affirmative Defense

The Commission, in its answer (Docket No. 8) states as its first affirmative defense, that the court is without jurisdiction to review a prior denial of a "re-opening", citing *Califano v. Sanders*, 430 U.S. 99, 108 (1977). In order to properly address the issue, a brief summary of the administrative process must be made.

The ALJ first issues a written decision giving findings of fact and the reasons for the decision. 20 C.F.R. §416.1453. This decision is binding on all parties to the hearing unless: 1) a party requests a review of the decision by the Appeals Council within the stated time period, and the Appeals Council reviews the case; or 2) a party requests review of the decision by the Appeals Council within the stated time period, the Appeals Council denies the request for review, and the party seeks judicial review by filing an action in district court. *Id.* §416.1455.

6

The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless an action is filed in district court. *Id.* § 416.1481. Apart from the authorized review by a district court, any determination made during the administrative process may be reopened: 1) within twelve months, for any reason; 2) within two years, if good cause is shown; or 3) at any time, if the determination was obtained by fraud. *Id.* § 416.1487 and §416.1488.

In *Califano*, the Court held that an administrative decision "not to reopen" a prior final determination, was not reviewable by the federal courts, unless the claimant challenged the Secretary's action on constitutional grounds. However, this ruling is not applicable to Delgado's claim because he did not request a re-opening of the Appeals Council's determination. Delgado is simply seeking judicial review of the ALJ's denial of disability benefits. In fact, Delgado is following precisely the procedural requirements set forth by the court and exhausted his administrative remedies. *McQueen v. Apfel*, 168 F.3d 152 (5th Cir. 1999) (review of the final decision of the Commissioner of Social Security in a social security disability claim is not proper unless the claimant has exhausted his administrative remedies). A social security disability claimant fails to exhaust his administrative remedies if he does not raise a claim of error to the Appeals Council before filing suit on that basis. Delgado filed his claim of error with the Appeals Council and as his request for review was denied, the decision of the ALJ became final and subsequently reviewable by the Federal Court. Jurisdiction of the Court in this case is proper.

### C. Summary Judgment Standard

Summary judgment evidence is viewed in the light most favorable to the non-movant.

*Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 456-58 (1992). Summary judgment is proper only when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An alleged factual dispute will not defeat a motion unless it is genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Once the movant establishes the absence of a factual dispute, the burden shifts to the non-movant to show that summary judgment is inappropriate.

The nonmoving party may not rest upon the mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256. Instead, the non-movant must "make a showing sufficient to establish the existence of each essential element of its case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This evidence must do more than create a metaphysical doubt. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Anderson*, 477 U.S. at 256.

### D. Judicial Review

Judicial review of the Commissioner's denial of social security benefits is limited to two inquiries. A federal court must determine (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing cases). If substantial evidence supports the Commissioner's findings, then the Commissioner's final decision must be affirmed. *See Newton*, 209 F.3d at 452 (relying on *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995)). "Substantial evidence is such relevant evidence as a reasonable mind

might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." 209 F.3d at 452 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner's, even if the evidence weighs against the Commissioner's final decision. *See* 209 F.3d at 452 (relying on *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1996)). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).

### 1. Substantial Evidence

Delgado's argument assumes that the ALJ was required to make a specific finding as to Delgado's ability to communicate in English and the transferability of his skills. This assumption is unwarranted. Delgado insists that if the proper fact questions would have been asked, then the Grid Rule would necessitate a finding of disabled. Actually, the Grid Rules "may" be used by the ALJ, if he so chooses, in place of a VE, in order to find that jobs exist in the national economy which the applicant is capable of performing. However, the Grid Rules, if referred to by the ALJ, can only be used if the "evidentiary underpinnings 'coincide exactly with the evidence of disability appearing on the record.'" *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir.1983), quoting *Thomas v. Schweiker*, 666 F.2d 999, 1004 (5th Cir.1982).

The use of Grid Rules is discretionary and serves the function of taking the place of VE testimony. The Grid Rules are used when the ALJ wants to take administrative notice of the existence of jobs in the national economy. In this case, the ALJ chose not to. Instead, the ALJ

relied on the testimony of the VE to make the determination that there were jobs, which a person with Delgado's RFC could perform. As such, there is no need to address the issue of whether the facts of Delgado's case matched Gird Rule 202.09. As long as the ALJ's decision was based on factors supported by substantial evidence, including the existence of jobs in the national economy, there is no need to remand the case for further fact finding.

A finding of no substantial evidence is only appropriate where there is no credible evidentiary findings to support the decision. In this case, the record demonstrates that the ALJ's findings were supported by credible evidence from the medical and vocational experts, as well as Delgado's own demonstrations before the court. Delgado does not refute the evidentiary support of the ALJ's findings regarding his age, past relevant work experience or his RFC. As for the level of education, Delgado's own behavior supplied the evidence that the ALJ used to make the appropriate determination of "limited". The VE then testified as to the existence of jobs in the national economy and was found to be credible by the ALJ. All of the necessary factors for finding that Delgado was not disabled were supported by substantial evidence.

### 2. Proper Legal Standard

In evaluating a disability claim, the Commissioner is required to follow a five-step sequential process to determine: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant's has a severe impairment; (3) whether the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. *Leggett v. Chater*, 67 F.3d 558, 564 fn.2 (5th Cir. 1995)

If the claimant proves his disability under the first four prongs of the test, then the burden switches to the Commissioner, who must establish, at the "fifth step," that the claimant has "residual functional capacity," given the claimant's age, education, and past work experience to perform other work available in the "national economy." Social Security Act § 223(d)(1)(A), as amended, 42 U.S.C. § 423(d)(1)(A); Social Security Administration Regulations, §404.1520(e,f); Part 404, Subpart P, App. 2; *see Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991). In this setting, an ALJ has a duty to make a sufficient inquiry into a claim. *Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1984). To make this fifth step determination, the Commissioner solicits the combined testimony of a medical expert and a vocational expert. *Leggett v. Chater*, 67 F.3d 558 (5th Cir. 1995).

In this case, the ALJ heard testimony of a medical expert and a vocational expert and used this evidence in the "fifth step" determination. The burden was correctly placed on the Commission to present evidence. The VE testified to the existence of jobs in the national economy that someone with Delgado's RFC could perform. This was precisely what the VE was supposed to do. There is no indication that the improper legal standard was used. The five steps of a disability determination were properly followed.

## V. Recommendation

As the ALJ found that testimony from the VE was credible and sufficient to make the "fifth step" determination that there were jobs in the national economy that Delgado could perform, there is no need to remand for further fact finding and Grid Rule matching. In addition, the ALJ employed the proper legal standards in making that determination. The factors which enabled the ALJ to find that Delgado was not disabled were all supported by substantial

evidence.

**IT IS RECOMMENDED** that Delgado's Motion for Summary Judgment be **DENIED** and that the Commissioner's Motion for Summary Judgment be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 15th day April, 2003.

John Wm. Black
United States Magistrate Judge